IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TAMMY A.,[1]

Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant.

No. 6:22-CV-525-HZ

OPINION & ORDER

Sherwood J. Reese
1700 Valley River Drive
Eugene, OR 97401

Attorney for Plaintiff

Kevin Danielson
Executive Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

Franco L. Becia
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Tammy A. brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)). The Court reverses the Commissioner's decision and remands this case for payment of benefits.

**PROCEDURAL BACKGROUND**

Plaintiff applied for DIB and SSI on September 27, 2019, alleging an onset date of January 1, 2012. Tr. 489.[2] Plaintiff's date last insured ("DLI") is December 31, 2016. Tr. 193-4. Her application was denied initially and on reconsideration. Tr. 327-28, 363-64.

On April 12, 2021, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 270-295. On May 12, 2021, the ALJ found Plaintiff not disabled. Tr. 190-209. The Appeals Council denied review. Tr. 1.

**FACTUAL BACKGROUND**

Plaintiff alleges disability based on vocal disorder, osteoporosis, chronic fatigue, fibromyalgia, depression, and back fractures. Tr. 493. At the time of her alleged onset date, she was 54 years old. Tr. 489. She has a high school education and past relevant work experience as

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 9.

home caregiver/attendant (DOT #354.377-014) and storage facility rental clerk, (DOT #295.367-026). Tr. 203.

**SEQUENTIAL DISABILITY EVALUATION**

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work."

20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets their burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

**THE ALJ'S DECISION**

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after her alleged onset date through her date last insured. Tr. 195. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: osteoporosis; cervical, lumbar, and thoracic degenerative disc disease with compression deformities; status-post laryngeal mass surgery; sensorineural hearing loss; and chronic pain syndrome Tr. 195. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 199. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following limitations: "[t]he claimant can occasionally climb, stoop, and crawl. The claimant can have no concentrated exposure to pulmonary irritants or hazards." Tr. 199. The ALJ concluded that Plaintiff could perform past relevant work as a Storage Facility Rental Clerk, which does not require the performance of work-related activities precluded by the claimant's residual functional capacity. Tr. 203. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 203.

///

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) improperly discounting Plaintiff's subjective symptom testimony; (2) incorrectly evaluating the medical evidence; and (3) failing to provide germane reasons for disregarding lay witness testimony. This Court agrees.

### I. Subjective Symptom Testimony

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). The ALJ engages in a two-step analysis for subjective symptom evaluation. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (superseded on other grounds). First, the ALJ determines whether there is "objective medical evidence of an

underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotations omitted). Second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Id.* (internal quotations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

Plaintiff alleged she was unable to work due to osteoporosis, back problems, a vocal disorder, and chronic pain. Specifically, Plaintiff testified that her impairments interfered with her ability to lift, squat, stand, bend, reach, kneel, and hear. Tr. 200. She also testified that she went back to school from 2011 to 2013 but did not return after she injured her back. Tr. 200. Plaintiff shared that she does not use a cane or any other supportive device for movement. Tr. 278. Plaintiff's back pain is a 2-4/10 on a good day, and a 5-6/10 on a bad day. Tr. 283. She also testified that she had a "pain stimulator implant" inserted in December, 2019, which "helped." Tr. 283. Plaintiff shared that she does "level trail walking," and "like[s] to sit and fish," but has

not been able to given the issues with her back, shoulder, and right hand. Tr. 289. Plaintiff further testified that she has "trouble lifting a gallon of milk [and] I have an 11-pound Chihuahua that I can't lift from the ground up." Tr. 277-79.

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and did not identify evidence of malingering. Tr. 200. However, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 200. Specifically, the ALJ found Plaintiff's symptom allegations were inconsistent with the objective medical evidence and treatment history, inconsistent with Plaintiff's activities of daily living, and that Plaintiff's conditions improved with treatment.

A. Objective Medical Evidence & Improvement with Treatment

The ALJ is instructed to evaluate objective evidence in considering a claimant's symptom allegations. 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence ... is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms[.]"). Indeed, "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022)(emphasis in original); s*ee also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (affirming the ALJ's credibility finding when the plaintiff's testimony of weight fluctuation was inconsistent with the medical record). Furthermore, if the record shows a claimant's symptoms have improved with treatment, that improvement is "an important indicator of the intensity and persistence of ... symptoms." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The Ninth Circuit has held that "evidence of medical

treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017).

Concerning Plaintiff's testimony about her back pain and her ability to lift up to twenty pounds, the ALJ lacked substantial evidence to conclude Plaintiff's testimony was inconsistent with the record or undermined by evidence of alleged improvement with treatment. Either can be a sufficient basis for discounting a claimant's testimony. *Smartt*, 53 F.4th at 498; 20 C.F.R. §§ 404.1529(c)(2-3), 416.929(c)(2-3). In support of this finding, the ALJ cited an April 2013 treatment note that Plaintiff's back pain had improved significantly Tr. 200. And the ALJ noted that in January 2016, Plaintiff had normal pain free range of neck motion Tr. 1426. Examinations in March 2018 and April 2019 also documented normal back and neck findings, other than some tenderness to palpation. Tr. 978, 1195. The ALJ also noted that Plaintiff reported improvement after being started on the stimulator in 2020, and ultimately reported complete pain relief. Tr. 201; *see* Tr. 1367, 1730, 1738 ("essentially no residual pain"), 1742 ("no residual back pain"), 1810 (pain 0/10, with a smiley face). *Id.* But these isolated instances of reduced pain or "normal" back and neck notations both fail to directly undermine Plaintiff's testimony about an inability to lift up to 20 pounds and fail to accurately state the record of Plaintiff's back and neck conditions.

The ALJ erred by cherry-picking scattered moments of improvement from a record that otherwise supports Plaintiff's testimony about her significant back and neck pain and inability to lift. "[I]t is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). For example, in the same 2013 note the ALJ cited as evidence Plaintiff was "managing her back pain pretty well," Plaintiff was "[u]nable to perform" basic wrist exams, confirming her inability to lift. *See* Tr. 588. Plaintiff

also reported a "general worsening," that she "[c]an't sleep," and she "feels unable to function due to pain." Tr. 587. Further undermining the ALJ's conclusions, a few months after Plaintiff experienced improvement from the implantation of the neurostimulator in 2020, her condition worsened again; she could "barely sit or stand for longer than a few minutes" with "[p]ain stabbing 10 out of 10 at worst"; and "this has been going on for past few months now." Tr. 1869. This, again, undermines whatever "improvement with treatment" Plaintiff saw in her back pain, and supports her testimony that she was unable to lift up to 20 pounds or sit or stand long enough to manage a work day.

The ALJ also erred by identifying purported inconsistencies between Plaintiff's symptom testimony about her back pain and "normal" findings because those "normal" results do not directly undermine what Plaintiff said about her pain. "[A]n ALJ may not disregard a claimant's testimony solely because it is not substantiated affirmatively by objective medical evidence." *Trevizo*, 871 F.3d at 679 (internal quotations and brackets omitted). In three of the ALJ's citations Plaintiff presented to the emergency room for unrelated ailments. *See, e.g.*, Tr. 674 (abdominal pain), 626 (bee sting), 653-54 (tooth pain). Concerning Plaintiff's hand pain, the ALJ did not cite any evidence at all, and therefore failed to identify inconsistencies in the record to undermine those aspects of Plaintiff's testimony. Ultimately, absence of evidence of Plaintiff's back pain at these unrelated ER visits do not contradict her testimony or provide adequate grounds to discount her testimony about the severity of those symptoms. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); *see* SSR 16-3p, 2017 WL 5180304, at *5. For these reasons, the ALJ did not provide clear and convincing reasons, supported by substantial evidence, to discount Plaintiff's subjective symptom testimony about her back or wrist pain on the basis that it was inconsistent with the record or that she enjoyed improvement with treatment.

B. Daily Activities

Activities of daily living can form the basis for an ALJ to reject a claimant's testimony in two ways: (1) where the activities "contradict [a claimant's] testimony"; or (2) as evidence a claimant can work if the activities "meet the threshold for transferable work skills." *Orn*, 495 F.3d at 639. A claimant, however, need not be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's alleged limitations to be relevant to her credibility).

The ALJ erred by rejecting Plaintiff's testimony about inability to lift, stand, or sit, without citing daily activities that actually conflicted with that testimony. "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony."). The ALJ emphasized Plaintiff's ability to walk as evidence that she was able to lift, stand, or sit well enough to work. Tr. 200-02. The ALJ noted that: She enjoys "nature trail walks for recreation"; "[o]n a good day, she takes her dogs on a walk"; she told her provider she could "easily walk a mile without difficulty"; she "testified that she did not require a cane to ambulate even though she alleged she was not able to attend school after her back injury"; and "[n]one of the records show antalgic gait, trouble ambulating." Tr. 200-02. Plaintiff did not testify that she could not walk; she testified that she "wasn't able to sit, stand, navigate the concrete steps," and that she has "trouble lifting a gallon of milk [and] [she has] an 11-pound Chihuahua that [she]

can't lift from the ground up." Tr. 277-79. the ALJ did not identify what evidence undermines Plaintiff's complaints of lifting limitations. *See* Tr. 200-02. Thus, the ALJ erred by overstating the claimant's daily activities and failing to explain how her activities were inconsistent with her disabling allegations. *Garrison*, 759 F.3d at 1016.

Because the ALJ failed to identify what testimony is not credible and why, or to provide clear and convincing reasons for discrediting Plaintiff's testimony concerning her physical limitations, the ALJ's decision to discount this subjective symptom testimony was error.

**II. Medical Opinion Evidence**

. For claims filed after March 27, 2017, ALJs are no longer required to give deference to any medical opinion, including treating source opinions. Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. Instead, the agency considers several factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). These are: supportability, consistency, relationship to the claimant, specialization, and "other factors." 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The "most important" factors in the evaluation process are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Under this framework, the ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" from each doctor or other source. 20 C.F.R. §§ 404.1520c(b), 416.920c(b)(2). In doing so, the ALJ is required to explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R §§ 404.1520c(b)(2), 416.920c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20

C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

In April 2019, treating provider Patrick S. Sawyer, PA-C of the Peace Health Spine Center, diagnosed Plaintiff with "chronic osteoporosis, multiple thoracic and lumbar compression fractures, and chronic back pain," and found Plaintiff "should limit lifting to no greater than ten pounds." Tr. 202, 979. He supported his assessment with X-rays showing a "[c]losed wedge compression fracture of first lumbar vertebra," as well as pointing out that "[a]dditional fractures, albeit chronic, [are] seen." Tr. 975-79. Mr. Sawyer assessed "[o]steoporosis with current pathological fracture," as well as "thoracic spine pain" and "severe low back pain," described as "consistently painful, regardless of time of day," especially "after prolonged standing and after prolonged sitting," and worsened by "twisting, lifting, lying flat, descending stairs, reaching, bending at the waist and extending at the waist." *Id.* He also observed that Plaintiff was "losing the appropriate curve in her thoracic kyphosis and lumbar lordosis" and reported her "pain is severe on a daily basis, sometimes 8/10." Tr. 979. Mr. Sawyer concluded, "Lifting limits should be no greater than 10 pounds" and Plaintiff should "avoid sitting or standing for extended periods of time, if possible, without a change in posture." Tr. 980.

The ALJ relied on three bases to find Mr. Sawyer's opinion that Plaintiff cannot lift more than 10 pounds[3] unpersuasive, none of which is supported by substantial evidence. Two of the

---

[3] The parties largely confine their dispute to Mr. Sawyer's opinion that Plaintiff could not lift more than 10 pounds. *See* Def. Br. at 4-7; Pl. Br. at 2 ("This case largely turns on whether

bases the Court addressed above: Plaintiff's "admissions about improvements and the performance of daily activities." Tr. 202. As previously discussed, neither Plaintiff's supposed improvements with treatment or her daily activities undermines the medical opinion (or symptom testimony) that she cannot lift more than 10 pounds in the work setting. Here again, the ALJ failed to articulate how Plaintiff's activities or (temporary) improvement in any way conflicts with Mr. Sawyer's opinion. Therefore, the ALJ committed harmful error by discounting Mr. Sawyer's opinion on these bases.

The ALJ also erred in finding that "claimant's normal objective findings" rendered Mr. Sawyer's opinion unpersuasive. An opinion's persuasiveness is a factor of its consistency with evidence from other sources and support from the record, and an ALJ must consider both factors. 20 C.F.R. §§ 404.1520c(c)(1-2), 416.920c(c)(1-2). Although the ALJ did not use the terms supportability or consistency, she discussed evidence from Mr. Sawyer's clinic and other evidence in the record under the umbrella of "claimant's normal objective findings." Tr. 202. The ALJ concluded that because other providers did not document reduced strength, and certain medical records showed Plaintiff had "normal range of motion, no tenderness to palpation, normal gait, and normal strength," that Mr. Sawyer's opinion was neither well-supported nor consistent with the record. Tr. 202. None of these citations directly undermines Mr. Sawyer's opinion, however, as they are from emergency room visits unrelated to Plaintiff's back pain or osteoporosis. Indeed, Mr. Sawyer supported his opinion by citing X-rays showing fractured vertebrae and noting Plaintiff's "pain is severe on a daily basis, sometimes 8/10." Tr. 975-79. Nor does the ALJ address the many medical records consistent with Mr. Sawyer's limitation that

---

[Plaintiff] -- despite myriad [other] issues … can still lift and carry more than the ten pounds required for 'sedentary' work").

Plaintiff lift no more than 10 pounds. Mr. Sawyer's opinion was consistent with records from most other providers in the record, who diagnosed significant pain and limited range of motion in Plaintiff's back. Tr. 798-88, 843, 850, 1127-8, 1940. Because the ALJ failed to support her conclusion about the supportability or consistency of Mr. Sawyer's opinion about lifting ability with substantial evidence, it was error to find it unpersuasive.

Additionally, the ALJ failed to address Mr. Sawyer's limitation that Plaintiff should "avoid sitting or standing for extended periods of time, if possible, without a change in posture." *See* Tr. 202. This Court cannot affirm an ALJ's decision based on a *post hoc* rationalization. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). Therefore, because the ALJ did not mention this limitation or offer any reason to discredit it, the ALJ erred in finding this aspect of Mr. Sawyer's opinion unpersuasive as well.

**III. Lay Witness Testimony**

"Lay testimony as to a claimant's symptoms is competent evidence that the Secretary must take into account." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you."). Under the 2017 regulations, the ALJ is not "required to articulate how [they] considered evidence from nonmedical sources" using the same criteria required for the evaluation of medical sources. 20 C.F.R. §§ 404.1520c(d), 416.920c(d). Under the new regulations, however, the ALJ must still articulate their assessment of lay witness statements. *Tanya L.L. v. Comm'r Soc. Sec.*, 526 F.Supp.3d 858, 869 (D. Or. 2021).

The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses. *Valentine*, 574 F.3d at 694. But the ALJ is not required "to discuss every witness's testimony on an individualized, witness-by-witness basis." *Molina*, 674 F.3d at 1114, *superseded on other grounds by* 20 C.F.R. § 404.1502(a). If the ALJ gives valid germane reasons for rejecting testimony from one witness, the ALJ may refer only to those reasons when rejecting similar testimony by a different witness. *Id*. Additionally, where "lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," any error by the ALJ in failing to discuss the lay testimony is harmless. *Id*. at 1117, 1122. Plaintiff's fiancé, who has been living with her throughout the relevant period since 2012, submitted a January 2020 Third-Party Function Report observing, among other limitations, Plaintiff "can't lift any things over ten pounds"; and she "use[d] to go to church, but sitting became to[o] hard" because "sitting or standing for very long has put an end to a lot of these kind of activities." Tr. 524-28. Because the ALJ indicated this report "includes many similar allegations" to Plaintiff's symptom testimony, the ALJ found Plaintiff's fiancé's observations "are not consistent with the record" for the same reasons. Tr. 200. As discussed above, the ALJ failed to supply legally sufficient reasons for rejecting Plaintiff's subjective complaints. The ALJ therefore erred by rejecting the lay witness statement for these same reasons.

**IV. Remand**

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an award of benefits. *See, e.g.*, *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985). Whether an action is remanded for an award of benefits or for further proceedings

depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000).

In determining whether an award of benefits is warranted, the court conducts the "three-part credit-as-true" analysis. *Garrison*, 759 F.3d at 1020. Under this analysis the court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Even if all the prongs are met, however, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Garrison*, 759 F.3d at 1021. "Serious doubt" can arise when there are "inconsistencies between the claimant's testimony and the medical evidence," or if the Commissioner "has pointed to evidence in the record the ALJ overlooked and explained how that evidence casts serious doubt" on whether the claimant is disabled under the Act. *Dominguez*, 808 F.3d at 407 (citing *Burrell*, 775 F.3d at 1141) (internal quotations omitted).

Here, the first prong is met based on the ALJ's harmful legal errors. As discussed above, the ALJ failed to provide legally sufficient reasons for discrediting Plaintiff's subjective symptom testimony, finding Mr. Sawyer's opinion unpersuasive, and discrediting the lay witness testimony.

As to the second prong, the Court finds remanding to further develop the record would serve little useful purpose. Defendant does not argue that this case, with a 1,970-page transcript, is not fully developed, nor does Defendant propose a "useful purpose" to further proceedings. *Garrison*, 759 F.3d at 1020-21. ("Allowing the Commissioner to decide the issue again would

create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.") (citation omitted).

As to the third prong, if the discredited evidence were credited as true, the ALJ would be required to find Plaintiff disabled on remand. Mr. Sawyer assessed a limitation of ten pounds maximum for lifting and carrying, Tr. 279, and the VE confirmed that this lifting limitation would preclude Plaintiff's past work as a Storage Facility Rental Clerk. Tr. 203, 294. The VE further testified that Plaintiff has no transferable skills to sedentary or light work, if limited to lifting no more than ten pounds. *Id.* Under the Social Security Medical-Vocational Guidelines, a claimant like Plaintiff who was closely approaching advanced age at the time of her alleged onset date, without transferable skills, and limited to sedentary work[4] is per se disabled. 20 C.F.R., Part 404, Subpart P, App. 2 §§201.00(f-g), 201.14. Thus, in fully crediting the medical opinions and Plaintiff's testimony as true, the ALJ would be required to find Plaintiff disabled on remand. *See Clester v. Comm'r of Soc. Sec.*, No. 09-cv-765-ST, 2010 WL 3463090, at *8 (D. Or. Aug. 3, 2010) (crediting doctor's opinion that the claimant "had marked limitations in her ability to ... maintain regular attendance, and be punctual within customary tolerances" combined with VE testimony that "individuals who miss two or more days on a chronic basis are not

[4] At the hearing, the Vocational Expert testified that "I think there are light range jobs that aren't necessarily lifting [more than 10 pounds]" that Plaintiff could perform. Tr. 294, *See* 20 C.F.R. §404.1567(b) (defining "light work" as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds"). There is no other evidence in the record indicating what, if any, light range jobs this Plaintiff could do, however, and the Commissioner points to none in his brief. Because it is the Commissioner's burden to identify "other work that exists in significant numbers in the national economy" that Plaintiff could perform, *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir.1999), and the Commissioner did not meet that burden by identifying any "light work" Plaintiff might be able to perform, the Court assumes Plaintiff was limited to "sedentary work" only. 20 C.F.R. §404.1567(a).

competitively employable" warranted remanding for an immediate calculation and award of benefits), *adopted*, 2010 WL 3463078 (D. Or. Aug. 31, 2010).

Finally, considering the record as a whole, the Court has no basis to doubt that Plaintiff is disabled under the Act. As such, the Court concludes the proper remedy in this case is to remand for benefits.

**CONCLUSION**

Based on the foregoing, the Commissioner's decision is REVERSED and REMANDED for immediate payment of benefits.

IT IS SO ORDERED.

DATED: August 22, 2023.

MARCO A. HERNÁNDEZ
United States District Judge